**IN THE UNITED STATES DISTRICT COURT** R E C E I V E D
**MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**    2008 JAN -3  A 10: 22

| | | |
|---|---|---|
| **DELVIN L. BALDWIN,** | ) | DEBRA P. HACKETT, CLK |
| | ) | U.S. DISTRICT COURT |
| **Plaintiff,** | ) | MIDDLE DISTRICT ALA |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.:** _2.08 CV 013- MEF_ |
| | ) | |
| **HYUNDAI MOTOR** | ) | |
| **MANUFACTURING** | ) | |
| **ALABAMA, LLC,** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **Defendant.** | ) | |
| | ) | |

## COMPLAINT

**COMES NOW** the Plaintiff, Delvin L. Baldwin, by and through his

attorneys of record, and for his Complaint against the Defendant, Hyundai Motor

Manufacturing Alabama, LLC, states as follows:

### STATEMENT OF THE CASE

1.    This is a lawsuit brought by the Plaintiff, Delvin L. Baldwin, who has

been affected by the discrimination alleged in the claims set forth below, seeking

permanent relief from unlawful discriminatory practices involving retention,

compensation, and other terms and conditions of employment in failing to remedy

systemic employment discrimination on the basis of race, retaliation and medical

leave.  The practices committed, and continuing to be committed, by the

SCANNED
POR 1.4.08

Defendant violate Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.

§ 2000e, *et seq.* ("**TITLE VII**") on the basis of race; and the Civil Rights Act of

1866, as amended; 42 U.S.C. § 1981 ("**§ 1981**") on the basis of race; and the

Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601 *et seq.*

("**FMLA**"), on the basis of interference and retaliation.

## JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction over this cause of action

pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 2000e *et seq.*

3.    Plaintiff has fulfilled all conditions precedent to the institution of this

action under the FMLA, Title VII, and § 1981.  The Plaintiff has filed two charges

of discrimination with the U.S. Equal Employment Opportunity Commission

("EEOC"), Charge Nos. 420 2007 03136 and 420 2006 04994.  Plaintiff timely

files this action within ninety (90) days of receipt of his Notice of Right to Sue

from the EEOC, dated as having been mailed on October 9, 2007. [Attached hereto

as Exhibit "A."]

4.    The Defendant is located and/or doing business within this judicial

district and division.  This action is brought within the judicial district wherein the

unlawful employment practices were committed, making venue proper under 28

U.S.C. § 1391(b).

2

## PARTIES

5.    Plaintiff, Delvin L. Baldwin ("Baldwin" or "Plaintiff"), is an adult African-American male resident of the state of Alabama. Plaintiff was an employee of Defendant at all times material herein within the meaning of Title VII, § 1981, and the FMLA.

6.    Defendant, Hyundai Motor Manufacturing Alabama, LLC. ("Hyundai" or "Defendant"), is, upon information and belief, an Alabama corporation doing business within this judicial district and division. Defendant was the employer of Plaintiff within the meaning of the Title VII, sec. 1981, and the FMLA at all times material herein.

## STATEMENT OF FACTS

7.    Delvin Baldwin first started working for Hyundai on May 9, 2005.

8.    Mr. Baldwin worked for the Chassis Final Four team's second shift.

9.    Mr. Baldwin installed carpet, "B pillars", electronic control units, crash bags, and front end modules.

10.    Mr. Baldwin connected radiator hoses and AC discharge hoses.

11.    Mr. Baldwin also installed battery trays, airducts, and converters.

12.    All of these duties required training, which Mr. Baldwin received.

3

13.    Steve Whittington, a white male, was Mr. Baldwin's supervisor.

14.    On March 21, 2006, Mr. Baldwin provided a written complaint regarding the racial discrimination he had observed and experienced to Shane Nice, Anthony LNU (last name unknown), Steve Whittington, and Marcus Hennow.

15.    Mr. Nice, a white male, was the shift plant manager.

16.    Anthony LNU, a white male, was the shift assistant plant manager.

17.    Mr. Whittington was the group leader.

18.    Mr. Hennow, a black male, was the team relations representative from the human resources department.

19.    Mr. Baldwin met the men in the team relations conference room.

20.    Mr. Baldwin informed the men that Sedrick Bowman, a black male and team leader, was ostracizing blacks on the line to please Mr. Whittington.

21.    Mr. Baldwin provided specific examples, such as the wrongful discipline of his team members for allegedly leaving the website without suitable authorization.

22.    As a solution to some of his problems, Mr. Baldwin requested a transfer to production control.

23.    Mr. Baldwin's requested was denied, but he was transferred to

4

another second shift position, where he installed gearshifts.

    24.    Two days later, on March 23, 2006, when Mr. Baldwin was at the end of his shift, Mr. Bowman ordered him to start working on five cars.

    25.    Mr. Baldwin pointed out to Mr. Bowman the time.  By response, Mr. Bowman replied him that he could work, or he could go home – it was up to him.

    26.    Mr. Bowman further informed him that the best thing for him to do would be to leave.

    27.    The following Monday, March 26, 2006,  Mr. Baldwin reported to his new team, Chassis Final One.

    28.    On the same day, Mr. Baldwin reported the incident with Mr. Bowman to Mr. Hennow.

    29.    Mr. Baldwin accused Mr. Bowman of retaliating for the complaint he had made on March 21st, 2006.

    30.    In April of 2006, Mr. Baldwin was made a production team "floater".

    31.    Other floaters fill in for all absent employees, including team leads.

    32.    Mr. Baldwin was never given an opportunity to fill in for team leads.

    33.    In May of 2006, Mr. Baldwin was taking off float duty.

    34.    Mr. Baldwin's future rotation requests and promotion requests were also denied.

35.    On March 27, 2007, Mr. Baldwin went to the infirmary because of a bone spur on his right pinkie finger.

36.    The medical clinic gave Mr. Baldwin an ice pack, and he finished his shift.

37.    On March 29, 2007, Mr. Baldwin used company procedure to call in sick.

38.    The bone spur in his finger had turned into a sharp throbbing pain, and Mr. Baldwin made an appointment with an orthopedic specialist.

39.    On March 30, 2007, Mr. Baldwin called Jane Ramsey, the medical benefits coordinator, to inquire about FMLA.

40.    Ms. Ramsey informed Mr. Baldwin that because he had previously been on FMLA leave for the same reasons earlier in the month, he would not need to reapply for FMLA leave.

41.    Mr. Baldwin missed work until he could see the orthopedic specialist on April 4, 2007.

42.    Mr. Baldwin's physician, Dr. Wells, found a bone mass with two black dots on the ends of the mass.

43.    Mr. Baldwin gave Dr. Wells Hyundai's FMLA paperwork.

44.    On the same day, Mr. Baldwin received a voicemail message from

6

Ms. Ramsey stating that she really needed his FMLA paperwork.

45.    Ms. Ramsey's voicemail informed Mr. Baldwin that if she didn't receive the paperwork, she would have to deny his FMLA request and charge him for his missed days.

46.    On April 5, 2007, Mr. Baldwin returned Ms. Ramsey's call to inform her that Dr. Wells had his paperwork.

47.    Ms. Ramsey asked him to have Dr. Wells fax the paperwork as soon as possible, and stated that if she didn't have the paperwork by Friday, April 6, she would have to deny his FMLA leave.

48.    Mr. Baldwin called Dr. Wells's office, and was informed that the paperwork wouldn't be ready until Friday afternoon.

49.    The next day, April 6, 2007, Mr. Baldwin went to Dr. Wells's office to check on his FMLA paperwork and to inform them that he needed to get the papers to the Defendant on that day.

50.    The paperwork was not ready, so Dr. Wells's office called Ms. Ramsey.

51.    Ms. Ramsey was not working because it was Good Friday, and the entire plant was shut down.

52.    A voicemail message was left for Ms. Ramsey, informing her that Dr.

7

Wells's dictation hadn't been transcribed yet, so the paperwork wouldn't be ready until Monday, April 9, 2007.

53.    On Monday, April 9, 2007, Mr. Baldwin picked up his FMLA paperwork from Dr. Wells, and his wife faxed it to Ms. Ramsey.

54.    On April 10, 2007, Mr. Baldwin confirmed with Ms. Ramsey that she had received his paperwork and that everything was okay.

55.    On the same day, Drew Pierce, a friend and co-worker, came to Mr. Baldwin's house to confirm a rumor that Mr. Baldwin had been terminated.

56.    Mr. Pierce had heard that Mr. Baldwin was sent a termination letter in the mail.

57.    Mr. Baldwin had not received any such letter.

58.    Mr. Baldwin called Ms. Ramsey to ask if she knew anything about him being terminated.

59.    Ms. Ramsey answered no, and informed Mr. Baldwin that she had recently sent out approval letters regarding his FMLA leave to the department heads.

60.    Mr. Baldwin called payroll, and he spoke with Robert LNU, a team relations manager.

61.    Robert read Mr. Baldwin a letter from Wendy Warner, which was

8

dated April 10, 2007, which letter informed him of his termination.

62.    On April 13, 2007, Mr. Baldwin received a letter from Ms. Ramsey confirming his FMLA leave for March 9 through April 30.

63.    Hyundai has a progressive discipline policy which details various steps of corrective action.

64.    Mr. Baldwin has never been disciplined under this policy.

65.    Mr. Baldwin has never been written up.

66.    Mr. Baldwin has always received good evaluations from his supervisors.

**COUNT ONE**
**TITLE VII - DISPARATE TREATMENT - RACE**

67.    Plaintiff adopts and re-alleges each and every allegation contained in this Complaint as if set out anew herein.

68.    In taking the above-described actions, Defendant intentionally discriminated against Plaintiff on the basis of his race, black, in violation of **TITLE VII**. Black employees and white employees were not treated similarly.

69.    Defendant condones and allows race-based discrimination. Said Defendant's actions were in violation of **TITLE VII**, and were taken with malice or reckless indifference to the federally-protected rights of Plaintiff.

70.    As a proximate consequence of the violation of **TITLE VII** by

Defendant, Plaintiff has suffered and will continue to suffer damages to his

professional life and future career opportunities, past and future pecuniary losses,

embarrassment, emotional pain, inconvenience, mental anguish, and non-

pecuniary damages.

71.    Plaintiff has satisfied all administrative prerequisites to bringing this

claim.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff demands the

following relief:

a.    Placement in the position in which he would have worked

absent the Defendant's discriminatory treatment;

b.    Back pay;

c.    Prejudgment interest;

d.    Attorneys' fees;

e.    Costs;

f.    Compensatory damages for loss of wages, loss of benefits,

including, but not limited to, retirement and pension benefits,

mental anguish, embarrassment, emotional distress, both past

and future;

10

g.    Punitive damages to deter such conduct in the future;

h.    Injunctive relief; and

i.    Such other legal or equitable relief as may be appropriate to effectuate the purposes of **TITLE VII** or to which Plaintiff may be entitled.

## COUNT TWO
## TITLE VII - RETALIATION

72.    Plaintiff adopts and re-alleges each and every allegation contained in this Complaint as if set out anew herein.

73.    During his employment with Defendant, Plaintiff opposed unlawful employment practices, specifically by raising concerns about race discrimination.

74.    In response to, and as a direct result of, having engaged in statutorily protected activity, Plaintiff was retaliated against by Defendant, which adversely affected the terms and conditions of Plaintiff's employment.

75.    Defendant's retaliatory actions are in violation of **TITLE VII.**

76.    Plaintiff has satisfied all administrative prerequisites to bringing this claim.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff demands the following relief:

a.    Placement in the position in which he would have worked

11

absent the Defendant's discriminatory treatment;

b.    Back pay;

c.    Injunctive relief;

d.    Pre-judgment interest;

e.    Attorneys' fees;

f.    Costs;

g.    Punitive damages to deter such future conduct;

h.    Compensatory damages for loss of wages, loss of benefits,

mental anguish, embarrassment, emotional distress; and

i.    Such other legal or equitable relief to which Plaintiff may be

entitled.

## COUNT THREE
## RACE DISCRIMINATION - § 1981

77.    Plaintiff adopts and realleges each and every allegation contained in
this Complaint as if set out anew herein.

78.    In taking the above-described actions, Defendant intentionally and
willfully discriminated against laintiff due to his race, black, in violation of §
1981.

79.    Defendant's actions were in violation of § 1981, and were taken with
malice or reckless indifference to the federally-protected rights of Plaintiff.

80.    As a proximate consequence of the violations of § 1981 by

Defendant, Plaintiff has suffered and will continue to suffer damage to his

professional life and future career opportunities, future pecuniary losses,

emotional pain, inconvenience, mental anguish, loss of enjoyment of life, and non-

pecuniary damages.

81.    Plaintiff has satisfied all administrative prerequisites to bringing this

claim.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff demands the

following relief:

        a.    Placement in the position(s) in which he would have worked

              absent defendant's discriminatory treatment;

        b.    All back pay and fringe benefits from the date of his non-

              promotions;

        c.    Pre-judgment interest;

        d.    Attorneys' fees;

        e.    Costs;

        f.    Punitive damages to deter such conduct in the future;

        g.    Compensatory damages for loss of wages, loss of benefits,

              including, but not limited to, retirement and pension benefits,

              mental anguish, emotional distress, and embarrassment, both

past and future; and

h.    Such other legal or equitable relief, including injunctive relief,
as may be appropriate to effectuate the purposes of § 1981 or to
which he may be entitled.

## COUNT FOUR
## § 1981 - RETALIATION

82.    Plaintiff adopts and re-alleges each and every allegation contained in
this Complaint as if set out anew herein.

83.    In taking the above-described actions, Defendant intentionally and
wrongfully retaliated against Plaintiff for his complaints of discrimination in
violation of §1981, and such retaliation was taken with malice or reckless
indifference to the federally protected rights of Plaintiff.

84.    As a result of this retaliation, Plaintiff was caused to be injured and
damaged; to have his career significantly and adversely impacted; to forego
compensation and benefits; and to endure mental anguish, emotional distress,
humiliation, and embarrassment.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff demands the
following relief:

a.    Placement in the position(s) in which he would have worked
absent Defendant's retaliatory treatment;

14

b.    All back pay from the date of his wrongful termination;

c.    Injunctive relief;

d.    Pre-judgment interest;

e.    Attorneys' fees;

f.    Costs;

g.    Punitive damages to deter such conduct in the future;

h.    Compensatory damages for loss of wages, loss of benefits,
      including, but not limited to, retirement and pension benefits,
      mental anguish, emotional distress, embarrassment, both past
      and future; and

i.    Such other legal or equitable relief as may be appropriate to
      effectuate the purposes of § 1981 or to which he may be
      entitled.

## COUNT FIVE
## FAMILY AND MEDICAL LEAVE ACT OF 1993 – INTERFERENCE

85.    Plaintiff adopts and re-alleges each and every allegation contained in this Complaint as if set out anew herein.

86.    Plaintiff was denied full benefits and rights under the FMLA, in that he was denied leave to which he was entitled under the FMLA to care for his serious health condition, and his employment was wrongfully terminated.

Defendant's actions were in violation of the FMLA, and were taken willfully and with malice or reckless indifference to Plaintiff's federally protected rights.

87.    As a result of the denial of benefits under the FMLA, which resulted in his ultimate termination, Plaintiff has suffered and will continue to suffer damage to his professional life and career opportunities, pecuniary losses, mental anguish, emotional distress, inconvenience, embarrassment, shame, loss of enjoyment of life, and non-pecuniary damages.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff requests the following relief:

    (a)    Reinstatement; or, in the alternative,

    (b)    Damages equal to the amount of any wages, salary, employment benefits, or other compensation denied to Plaintiff by reason of Defendant's FMLA violations;

    (c)    Any actual monetary losses sustained by Plaintiff as a direct result of Defendant's FMLA violations;

    (d)    Injunctive relief;

    (e)    Pre-judgment interest;

    (f)    Attorneys' fees;

    (g)    Costs;

    (h)    Liquidated damages to deter such conduct in the future; and

    (i)    Such other legal or equitable relief as may be appropriate to effectuate the purposes of the FMLA or to which Plaintiff may be

16

reasonably entitled.

## COUNT SIX
## FMLA - RETALIATION

88.    Plaintiff adopts and re-alleges each and every allegation contained in this Complaint as if set out anew herein.

89.    Plaintiff was denied full benefits and rights under the FMLA in that he was retaliated against based on his exercise of FMLA rights to which he was entitled and his employment was wrongfully terminated. Defendant's actions were in violation of the FMLA, and were taken willfully and with malice or reckless indifference to the federally-protected rights of Plaintiff.

90.    As a result of the denial of benefits under the FMLA and his ultimate termination, Plaintiff was caused to be injured and damaged; to have to seek other employment; to have his career significantly and adversely impacted; to forego compensation and benefits; and to endure mental anguish, emotional distress, humiliation, and shame.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff demands the following relief:

a.    Damages equal to the amount of any wages, salary, employment benefits, or other compensation denied to Plaintiff by reason of Defendant's violations;

17

b.      Any actual monetary losses sustained by Plaintiff as a direct result of Defendant's violations;

c.      Injunctive relief;

d.      Prejudgment interest;

e.      Attorneys' fees;

f.      Costs;

g.      Liquidated damages to deter such conduct in the future; and

h.      Such other legal or equitable relief as may be appropriate to effectuate the purposes of the FMLA or to which he may be entitled.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON ALL CLAIMS SO TRIABLE.**

Respectfully submitted,

John D. Saxon
Alabama Bar No. ASB-3258-H57A
Carolyn N. Lam
Alabama Bar No. ASB-4397-O76L
Attorneys for Plaintiff

**OF COUNSEL:**

**JOHN D. SAXON, P.C.**
2119 Third Avenue North
Birmingham, AL 35203
Telephone: (205) 324-0223

18

Facsimile:   (205) 323-1583
Email:       jsaxon@saxonattorneys.com
             clam@saxonattorneys.com

## PLAINTIFF'S ADDRESS:

Delvin L. Baldwin
1313 Summerfield Place,
Montgomery, AL 36117

## PLEASE SERVE DEFENDANT BY
## CERTIFIED MAIL RETURN RECEIPT REQUESTED:

Hyundai Motor Manufacturing Alabama, LLC
c/o Richard E. Neal
700 Hyundai Blvd.
Montgomery, Alabama 36105

```
Court Name: U S DISTRICT COURT - AL/M
Division: 2
Receipt Number: 4602002805
Cashier ID: cstrecke
Transaction Date: 01/03/2008
Payer Name: JOHN D SAXON PC
-----------------------------------
CIVIL FILING FEE
 For: JOHN D SAXON PC
 Case/Party: D-ALM-2-08-CV-000013-001
 Amount:        $350.00
-----------------------------------
CHECK
 Remitter: JOHN D SAXON PC
 Check/Money Order Num: 2189
 Amt Tendered:  $350.00
-----------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00

BALDWIN V HYUNDAI

DALM208CV000013-F
```