IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DELVIN L. BALDWIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:08-cv-13-MEF |
| | ) | |
| HYUNDAI MOTOR | ) | (WO) |
| MANUFACTURING ALABAMA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

Delvin L. Baldwin ("Plaintiff") filed a Complaint (Doc. #1) on January 3, 2008,

bringing claims of race discrimination, retaliation, and interference with FMLA rights

against Hyundai Motor Manufacturing Alabama, LLC ("Defendant") relating to his

employment as a production line employee.  Plaintiff also alleges race discrimination and

retaliation pursuant to 42 U.S.C. § 2000e, *et seq* ("Title VII") and 42 U.S.C. § 1981

("section 1981").  Finally, Plaintiff alleges that Defendant violated the Family and

Medical Leave Act of 1993 ("FMLA") pursuant to 29 U.S.C. § 2601, *et seq*.

Plaintiff seeks declaratory relief, compensatory damages, punitive damages,

equitable relief, costs, and attorneys' fees.  This cause is before the Court on Defendant's

Motion for Summary Judgment (Doc. # 18) filed on January 9, 2009.  In this motion,

Defendant argues that it is entitled to summary judgment because Plaintiff cannot

establish a *prima facie* case or meet his burden under the *McDonnell Douglas* framework

on any of his claims.  The Court agrees that Plaintiff cannot meet his burden of proof and finds that the motion for summary judgment is due to be GRANTED for the reasons set forth in this Memorandum Opinion and Order.

## II. JURISDICTION AND VENUE

Jurisdiction over Plaintiff's federal claims is proper under 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights).  The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations in support of both personal jurisdiction and venue.

## III. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in

support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324.  To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).

## IV. FACTS

The Court has carefully considered all documents, declarations and affidavits submitted in support of and in opposition to the motion.  The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following facts:

**A. The Parties**

3

Plaintiff is an African American male.  Defendant operates an automobile manufacturing facility in Montgomery, Alabama that produces Hyundai Sonata and Santa Fe automobiles.  Defendant employed Plaintiff as a full-time Production Team Member on May 9, 2005 and assigned Plaintiff to the Chassis Final Four Team.  Plaintiff asserts numerous claims against Defendant relating to his employment including race discrimination, retaliation, and interference with his FMLA rights.

**B. Defendant's Employee Hierarchy**

Defendant's Assistant Manager of General Assembly supervises Group Leaders. Group Leaders supervise Chassis production teams and their Team Members.  Team Leaders also supervise Team Members.  In this role, Team Leaders assign Team Members to different tasks.  In particular, a Team Leader may assign a Team Member to "floater" duties.  A "floater" floats from station to station as needed to relieve or fill in for other Team Members who are away from the production line.  Team Members who serve as "floaters" are not given addition pay or benefits.  In addition, Defendant makes no distinction with regard to status, rank, or other benefits between Team Members who serve as "floaters" and those without "floater" duties.

**C.  Plaintiff's Letters of Complaint to Defendant**

**I. February 2006 Letter**

In February of 2006, Plaintiff submitted a letter to Defendant with the subject line "Transfer."  In his letter, Plaintiff expressed concern that Defendant disciplined African

4

American Team Members for leaving the work place without authorization but did not discipline a Caucasian employee for similar behavior.  Plaintiff himself was not involved in the incident.  Plaintiff also requested a transfer from the Chassis Final Four Team to the Pre-Delivery Inspection Team.  Lastly, Plaintiff complained in the letter that he could not receive fair treatment because none of the managers in his department were African American.

Audie Swegman, Defendant's Team Relations Manager ("Swegman"), replied to Plaintiff's concerns in a letter dated February 22, 2006.  Swegman explained that he could not discuss the matter of Team Members leaving work without authorization without violating Team Member confidentiality.  However, Swegman assured Plaintiff "that this matter was handled appropriately in all respects."  Swegman also explained to Plaintiff that he was not eligible for a transfer because there was no position open on the Pre-Delivery Inspection team and because he was not eligible to transfer.[1]  In conclusion, Swegman encouraged Plaintiff to report any specific complaints of discrimination.

### ii. May 2006 Letter

On May 5, 2006 , Plaintiff submitted a second letter to Defendant with the subject line "Retaliation, Harassment, Discrimination in the Workplace."  Plaintiff's letter contained several complaints: (1) Plaintiff was assigned to "float" in April 2006 but was then removed from that position in May 2006, (2) Plaintiff was not promoted to Team

---

[1]As required by Defendant's Transfer Policy, an employee is not eligible to transfer until he has worked for at least twelve months.

Leader, (3) Team Member Gene Wilson, an African American male, was assigned a Team Leader position, (4) Plaintiff had not been transferred to Chassis Final Five Team, and (5) a Team Member had threatened Plaintiff.

In response to Plaintiff's second letter, Shawn Flate and Stacye Jones of the Team Relations Department ("Flate and Jones") met with Plaintiff. Flate and Jones also met with Gene Wilson and the other Team Members that Plaintiff mentioned in his letter. After their meetings, Flate and Jones determined that Plaintiff has not been unfairly treated, threatened, or discriminated against. On June 15, 2006, Flate sent Plaintiff a letter summarizing their conclusions. The letter stated:

> "On or about May 5, 2006 Team Relations received written complaint from you about a situation that you believed included acts of discrimination. Upon through [sic] investigation we were unable to confirm any acts of unlawful discrimination. HMMA is committed to maintaining a work environment free from all forms of unlawful discrimination. Cases of such unlawful harassment should be reported to your group leader/manager, team relations representative, or the team relations manager. These matters will be promptly investigated and appropriate action taken in accordance with HMMA policy."

Thereafter, Defendant considered the investigation closed.

### iii. March 2007 Letter

On March 21, 2007, Plaintiff requested a transfer to the Production Control Department in a third letter. In his request, Plaintiff complained that his Team Leader, Sedrick Bowman ("Bowman"), harassed African American males. Bowman is also an African American male. In response to Plaintiff's request, Defendant's Team Relations

Department offered to reassign Plaintiff to the Chassis Final Two Team so that Plaintiff would no longer work with Bowman.  Plaintiff agreed and planned to start at his new position on Monday, March 26, 2007.

**D.  Altercation with Bowman**

On Friday, March 23, 2007, Plaintiff and Bowman had a verbal argument in the workplace.  Defendant and Plaintiff's descriptions of the argument vary, but the parties agree on two aspects of the fight: (1) shortly before the end of Plaintiff's shift, Bowman ordered the Team Members to "build back five units" before leaving for the day, and (2) Plaintiff responded that "it was the end of the shift" and unfair to keep working.

Subsequently, Plaintiff alleges that Bowman instigated their argument, threatened him, and told Plaintiff that he could either "work or go home."  Defendant contends that Plaintiff was the aggressor and told Bowman they should "take it outside."  Defendant submitted statements from five other Team Members who witnessed the argument. Bowman reported the verbal dispute to his supervisors on Friday, March 23, 2007. Plaintiff reported the incident on Monday, March 26, 2007, when he reported to his new position with the Chassis Final Two Team.

**E. Plaintiff's Application for Team Leader in January 2007**

In January of 2007, Plaintiff and sixteen other Team Members applied for a Team Leader position (collectively "candidates").  Defendant requires Team Leader applicants to undergo an extensive application process.  This selection process includes a written

7

assessment, interviews, and ranking by other employees.  First, applicants complete a written assessment.  This assessment asks each applicant to provide written answers to a standardized set of questions.  Defendant grades the applicants' answers and provides each applicant with a numerical score.  If an applicant's written assessment score is unsatisfactory, then Defendant eliminates that applicant from the promotion process.

Plaintiff's written assessment score was 48 out of 100 points.  Of seventeen candidates, four candidates scored lower than Plaintiff.  Defendant dropped the seven candidates with the lowest written assessment scores, including Plaintiff, from consideration for Team Leader.  Four of those seven were Caucasian employees and three were African American employees.  Four Team Members were ultimately promoted to Team Leader positions.  Two of the successful candidates were Caucasian employees and two were African American employees.

## F. Plaintiff's Application for FMLA Leave

Plaintiff suffered an injury to his finger before working for Defendant.  He re-injured that finger and did not work from March 9, 2007 until March 14, 2007.  On March 12, 2007, Plaintiff requested FMLA leave.  Defendant's medical leave coordinator, Jane Ramsey ("Ramsey"), officially approved Plaintiff's request for FMLA in a letter dated April 12, 2007.  Ramsey informed Plaintiff that he had been approved for FMLA leave March 9, 2007 though May 1, 2007.  Plaintiff went on FMLA leave on March 29, 2007, before he had received Ramsey's letter and six days after the altercation

8

with Bowman.

**G. Plaintiff's Employment Termination on April 10, 2007**

Marcus Hannah ("Hannah"), a Specialist in Defendant's Team Relations Department, investigated the altercation between Plaintiff and Bowman.  Hannah met with Plaintiff, Bowman, and the five Team Members who witnessed the incident.  All parties submitted written statements to Hannah.  Based on the statements and his interviews, Hannah concluded that Plaintiff became angry when Bowman announced the Team had to finish five more units.  Hannah also concluded that Plaintiff was the aggressor and had threatened Bowman.

Hannah forwarded his conclusions to Defendant's Workplace Violence Committee.  Wendy Warner ("Warner"), Manager of Defendant's Employment Section, was a member of the committee and determined that Plaintiff's employment should be terminated for violating Defendant's Work Place Violence Policy.[2]  Warner wrote a letter to Baldwin on April 10, 2007, informing him that his employment was terminated because he was "involved in a situation which, after investigation, was found to violate HMMA's Work Place Violence Policy."  (Doc. # 19, Ex. 20.)

**H. Charges of Discrimination**

On October 6, 2006, Plaintiff signed a Charge of Discrimination against Defendant

---

[2]Defendant's Work Place Violence Policy 3.1 states that "Threats, threatening behavior, or acts of violence against Team Members, vendors, contractors, visitors, or other individuals by anyone on HMMA property will not be tolerated."  (Doc. #19, Ex. E.)

with the Equal Employment Opportunity Commission ("EEOC").  By signing the Charge

of Discrimination, Plaintiff declared under perjury that his statements in the charge were

true and correct.  In the charge, Plaintiff complained of discrimination on the basis of

race.  Plaintiff stated that he had complained to Defendant in a letter that there were no

black managers in his department and that Defendant demoted Plaintiff from his "floater"

position once Defendant received his letter.  Plaintiff also complained of retaliation.

On April 20, 2007, Plaintiff signed a second Charge of Discrimination against

Defendant with the EEOC.  In the charge, Plaintiff complained of race discrimination and

retaliation relating to his letters to Defendant and his argument with Bowman.  In

particular, Plaintiff alleges that Swegman displayed "Klu Klux Klan" material on his

vehicle and apparel and that Swegeman was unsympathetic to his complaints.

## I. Alleged Discriminatory Conduct, Retaliatory Conduct, and Interference with Rights Protected by FMLA

In this lawsuit, Plaintiff contends that he was discriminated against on the basis of

his race when he was demoted from his "floater" duties.  He also alleges that Defendant

discriminated against him when Defendant did not promote him to Team Leader in

January of 2007.  Plaintiff also alleges that Defendant discriminated against him by

terminating his employment on April 10, 2007.

Additionally, Plaintiff claims that Defendant unlawfully retaliated against him for

complaining of race discrimination and filing a Charge of Discrimination with the EEOC

on October 6, 2006.  Furthermore, Plaintiff alleges that Defendant violated the FMLA by

interfering with his FMLA rights and retaliating against him for requesting FMLA leave.

**J. The Lawsuit**

On January 3, 2008, Plaintiff filed suit in this Court.  Plaintiff seeks declaratory and equitable relief as well as damages for alleged discrimination on the basis of race, retaliation, and violations of the FMLA.  Plaintiff complained of the following acts of discrimination: (1) Defendant removed Plaintiff from "floater" duties in May of 2006 and did not remove Caucasian employees, (2) Defendant did not promote him to Team Leader in January of 2007 and promoted less qualified Caucasian employees, and (3) Defendant terminated Plaintiff's employment on April 10, 2007 and did not terminate the employment of similarly situated Caucasian employees.  Plaintiff also complained of FMLA retaliation and interference with FMLA rights.  Plaintiffs sought a remedy for the alleged race discrimination pursuant to section 1981 and Title VII.  Plaintiff also sought remedy for retaliation pursuant to section 1981 and Title VII.  Pursuant to the FMLA, Plaintiff sought remedy for interference with FMLA rights and retaliation.

## V. DISCUSSION

Plaintiff seeks recovery pursuant to section 1981 and Title VII on his race discrimination and retaliation claims.  Plaintiff also seeks recovery under the FMLA for retaliation and interference with his FMLA rights.  The Court will first consider Plaintiff's race discrimination claims.

**A. Alleged Discrimination**

11

Plaintiff argues he was discriminated against on three occasions: (1) Defendant removed Plaintiff from "floater" duties in May of 2006, (2) Defendant did not promote him to Team Leader in January of 2007, and (3) Defendant terminated Plaintiff's employment on April 10, 2007.  The Court concludes that no reasonable fact finder could find Plaintiff has established a *prima facie* case on his claims.  Therefore, Defendant is due to be granted summary judgment on Plaintiff's race discrimination claims**.**

Plaintiff seeks recovery pursuant to Title VII and section 1981.  In this Circuit, Title VII and section 1981 claims have the same legal elements when the claims are based on the same set of facts.  *See, e.g.*, *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989); *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1275 n.5 (11th Cir. 2008); *see also Richardson v. Leeds Police Dep't*, 71 F.3d 801, 805-806 (11th Cir. 1995).  Because Plaintiff's claims are based on the same facts, the Court's discussion of Plaintiff's discrimination claims are the same whether the Court is considering Plaintiffs claims pursuant to Title VII or section 1981.

An employee bringing a claim under Title VII must initially establish a *prima facie* case of discrimination through one of three methods: by presenting direct evidence of discriminatory intent, presenting circumstantial evidence of discrimination by satisfying the analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) and its progeny, or by introducing statistical evidence of discrimination.  *Walker v. NationsBank of Florida, N.A.,* 53 F.3d 1548, 1556 (11th Cir. 1995).  Because Plaintiff has presented

neither appropriate statistical evidence, nor direct evidence, in support of his claims of
discrimination, the Court will address only Plaintiffs' circumstantial evidence.

To establish a discrimination claim by circumstantial evidence using the
*McDonnell Douglas* framework, the employee has the initial burden of showing, by a
preponderance of the evidence, a *prima facie* case of the proscribed practice. *Young v.
General Foods Corp.,* 840 F.2d 825, 828 (11th Cir. 1988), *cert. denied,* 488 U.S. 1004
(1989). The essence of the *prima facie* case is that the employee presents circumstantial
evidence sufficient to generate a reasonable inference by the fact finder that the employer
used prohibited criteria in making an adverse decision about the employee. If established,
the *prima facie* case raises a rebuttable presumption that the employer is liable to the
employee. *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248 (1981).
"Demonstrating a *prima facie* case is not onerous; it requires only that the plaintiff
establish facts adequate to permit an inference of discrimination." *Holifield v. Reno,* 115
F.3d 1555, 1562 (11th Cir. 1997).

The Eleventh Circuit Court of Appeals has repeatedly emphasized that the
requisite showings that make up a *prima facie* case are not meant to be rigid or inflexible.
*See, e.g., Schoenfeld v. Babbitt,* 168 F.3d 1257, 1268 (11th Cir. 1999) (collecting cases).

> In cases where the evidence does not fit neatly into the classic
> prima facie case formula, for example, [the Eleventh Circuit
> has] stated that "[a] prima facie case of disparate treatment
> can be established by any 'proof of actions taken by the
> employer from which we infer discriminatory animus because
> experience has proved that in the absence of any other

13

> explanation it is more likely than not that those actions were
> bottomed on impermissible considerations.'"

*Id.* at 1268 (citing *Hill v. Metro. Atlanta Rapid Trans. Auth.,* 841 F.2d 1533 (11th Cir.

1988), *modified,* 848 F.2d 1522 (11th Cir. 1988) (quoting *Furnco Constr. Corp. v.

Waters*, 438 U.S. 567, 576 (1978))).

Once a plaintiff establishes the requisite elements of the *prima facie* case, the

defendant has the burden of producing a legitimate, non-discriminatory reason for the

challenged employment action. *See, e.g., Holifield v. Reno,* 115 F.3d at 1564 (citing

*Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248 (1981)). The employer's burden is

"exceedingly light." *Holifield,* 115 F.3d at 1564. This burden is one of production, not

persuasion and consequently, the employer need only produce evidence that could allow a

rational fact-finder to conclude that the challenged employment action was not made for a

discriminatory reason. *See, e.g., Davis v. Qualico Miscellaneous, Inc.,* 161 F. Supp. 2d

1314, 1321 (M.D. Ala. 2001).

If such a reason is produced, a plaintiff then has the ultimate burden of proving the

reason to be a pretext for unlawful discrimination. *See, e.g., Holifield,* 115 F.3d at 1565;

*Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir. 1997) (plaintiff "has the

opportunity to discredit the defendant's proffered reasons for its decision"). Thus, once

the employer articulates a legitimate, non-discriminatory reason, the burden returns to the

employee to supply "evidence, including the previously produced evidence establishing

the *prima facie* case, sufficient to permit a reasonable fact-finder to conclude that the

14

reasons given by the employer were not the real reasons for the adverse employment decision." *Davis,* 161 F. Supp. 2d at 1322 (citing *Chapman v. AI Transp.,* 229 F.3d 1012, 1024 (11th Cir. 2000) (*en banc*)).  The plaintiff may seek to demonstrate that the proffered reason was not the true reason for the employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256; *Combs,* 106 F.3d at 1528.  A plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148 (2000).

### 1. May 2006 Removal of "Floater" Duties

Plaintiff argues Defendant unlawfully discriminated against him in May of 2006 when Defendant removed him from his "floater" duties.[3]  Defendant, in response, argues that Plaintiff cannot establish a *prima facie* case of race discrimination.

### a. *Prima facie* case

To make out a *prima facie* case of racial discrimination under Title VII, a plaintiff

---

[3] Defendant removed Plaintiff from his "floater" duties at Plaintiff's request.  Plaintiff argues he asked to be relieved because he was not asked to fill in for the Team Leader while serving as a "floater."  In some of his briefs, Plaintiff argues that Defendant's refusal to let him fill in for the Team Leader was discriminatory.  However, in the month that Plaintiff's "floated," Gene Wilson, an African American male, filled in for the Team Leader.  The Court, therefore, construes Plaintiff's argument as part of his claim that Defendant unlawfully discriminated against him by removing him from his "floaters" duties.

must show (1) he belongs to a protected class; (2) he was qualified to do the job; (3) he was subjected to adverse employment action; and (4) his employer treated similarly situated employees outside his class more favorably. *See Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003). Defendants do not contend that Plaintiff is not a member of a protected class. Defendants argue that Plaintiff cannot establish a *prima facie* case of race discrimination because Plaintiff's removal from "floater" duties does not constitute an adverse employment action and Plaintiff cannot show that Defendant treated similarly situated employees outside Plaintiff's class more favorably. The Court agrees.

For the purposes of a Title VII discrimination claim, the Eleventh Circuit defines an adverse employment action as an "ultimate employment decision" or some other showing of substantiality in the employment context. *See Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008); *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001). An ultimate employment decision includes termination, failure to hire, or demotion. *Crawford*, 529 F.3d at 970. More particularly, when defining the level of substantiality required for a Title VII discrimination claim, the Eleventh Circuit requires an employee to demonstrate he suffered "a serious and material change in the terms, conditions, or privileges of employment" to show an adverse employment action. *Davis*, 245 F.3d at 1239.

Courts have been reluctant to hold that job reassignments amount to adverse

employment action when unaccompanied by any tangible harm.  *See, e.g., Kocsis v. Multi-Care Mgmt., Inc.*, 79 F.3d 876, 885 (6th Cir. 1996) (finding that "reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims"); *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1557 (D.C. Cir. 1997) (agreeing with "other circuits [which] have held that changes in assignments or work-related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes"). In unusual instances, a change in work assignments may be so substantial and material that it alters the "terms, conditions, or privileges" of employment.  *Davis*, 245 F.3d at 1245; *cf. McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1077-78 (11th Cir. 1996). However, the Eleventh Circuit has noted that "[i]n the vast majority of instances ... an employee alleging a loss of prestige on account of a change in work assignments, without any tangible harm, will be outside the protection afforded by Congress in Title VII's anti-discrimination clause."  *Id.* at 1245; *see also Davis*, 245 F.3d at 1242 (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997) ("[T]he protections of Title VII simply do not extend to 'everything that makes an employee unhappy'")). Therefore, for a removal of "floater" duties to constitute an adverse employment action within the meaning of Title VII, the removal must result in a tangible harm.

Plaintiff's sole argument is that "floater" duties allow an employee to gain management experience and additional hours.  Plaintiff does not provide any evidence

that he was demoted or that his removal from "floater" duties resulted in any tangible change in his employment.  Therefore, no reasonable fact finder could find that Plaintiff's removal from "floater" duties constitutes an adverse employment action.  This claim fails to meet the *prima facie* requirements of a race discrimination claim.

Even assuming, *arguendo*, that Plaintiff has established an adverse employment action, Plaintiff's claim still fails because he cannot show that Defendant treated similarly situated employees outside Plaintiffs' class more favorably.  To be appropriate a comparator, the employee must be "similarly situated in all aspects." *Holifield v. Reno*, 115 F.3d 1555, 1563 (11th Cir. 1997); *see also Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 258 (1981) ("*McDonnell Douglas* teaches that it is the plaintiff's task to demonstrate that similarly situated employees were not treated equally").  "The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) (internal citations omitted).

Plaintiff asserts that James Lenoir ("Lenoir") is a similarly situated comparator.  Lenoir is a Caucasian male who Defendant assigned to "float" after Plaintiff was relieved of "floater" duty.[4]  However, the Court questions whether Lenoir is similarly situated.  Defendant submitted evidence that Lenoir had superior communication skills, leadership

_____

[4]Defendant later designated Lenoir to fill in for the Team Leader while "floating." Defendant also assigned Gene Wilson, an African American male, to fill in for the Team Leader while "floating."  Three employees have served as "floaters" but did not fill in as Team Leader: Plaintiff, Josh Crenshaw, and Fred Paoletto.  Josh Crenshaw and Fred Paoletto are Caucasian males.

abilities, and knowledge of each production line station.  In addition, Team Members

complained repeatedly to management about Plaintiff's performance and did not

complain about Lenoir's performance.  The record, therefore, is undisputed that Lenoir

and Plaintiff possessed different abilities and relationships with other Team Members.

Because Lenoir and Plaintiff had significantly different skills and relationships, no

reasonable fact finder could conclude that Plaintiff has demonstrated that Defendant

treated similarly situated employees outside his class more favorably.  Accordingly,

Plaintiff has not established a *prima facie* case of discrimination.

### 2. January 2007 Team Leader Application

Plaintiff argues Defendant unlawfully discriminated against him in January of

2007 when Defendant did not promote him to the position of Team Leader.  Defendant, in

response, argues that Plaintiff cannot establish a *prima facie* case of race discrimination.

#### a. *Prima facie* case

To make out a *prima facie* case of racial discrimination in promotion under Title

VII, a plaintiff must show (1) he belongs to a protected class; (2) he was qualified and

applied for the promotion; (3) he was rejected despite his qualifications; and (4) his

employer promoted equally or less qualified employees outside his class.  *See Wilson v.

B/E/ Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004).  The parties do not dispute

that Plaintiff is a member of a protected class and that Defendant rejected Plaintiff's

application for the Team Leader position.  To establish a *prima facie* case, therefore,

Plaintiff must demonstrate that he was qualified for the Team Leader position and that Defendant promoted an equally or less qualified employee outside his class. The Court finds that no reasonable fact finder could conclude Plaintiff has met his burden.

Courts focus on the employer's requirements when considering whether an individual is qualified for the promotion at issue. *See e.g., Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997) (stating "federal courts do not sit to second-guess the business judgment of employers"); *Nix v. WLCY Radio/Rahall Commc'ns,* 738 F.2d 1181, 1187 (11th Cir. 1984) (holding an "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason"). An employee's expectations do not establish requisite qualifications. *Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1255 (11th Cir. 2000) (finding that employee's opinion that she is more qualified that other candidate "is insufficient to raise a genuine issue of fact"); *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997) (explaining that a plaintiff's "opinion, without more, is not enough to establish a *prima facie* case" of discrimination); *Brooks v. County Comm'n of Jefferson County, Ala.*, 446 F.3d 1160, 1165 (11th Cir. 2006) (noting that the plaintiff's beliefs that his qualifications were superior are insufficient).

Defendant required Team Leader applicants to undergo an extensive application process that included a written assessment, interview, and a ranking by other employees. Seventeen employees applied for a Team Leader position. Plaintiff's written assessment

score was 48 out of 100 points. Four applicants scored lower than Plaintiff on the written assessment. Defendant dropped the seven applicants with the lowest written assessment scores from the application process, including Plaintiff. While Plaintiff was eligible to sit for the Team Leader written assessment, he was not qualified for the position because his written assessment score was among the lowest. Therefore, no reasonable fact finder could find that Plaintiff was qualified for the position.

Even assuming that Plaintiff was qualified to be a Team Leader, he cannot establish the fourth element of a *prima facie* case because he cannot show that Defendant promoted an equally or less qualified employee outside his class. To demonstrate this element, a plaintiff must show that the disparities in qualifications are of "such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *See Cooper v. Southern Co.*, 390 F.3d 695, 732 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454 (2006) (per curiam). In other words, a comparator is an employee "similarly situated [to the plaintiff] 'in all relevant respects.'" *Wilson,* 376 F.3d at 1091.

Here, four Caucasian employees were among the seven applicants that Defendant dropped from the application process due to their low written assessment scores. Like Plaintiff, the Caucasian employees with low scores were not selected for a Team Leader position. Defendant ultimately promoted four employees to Team Leader positions. Two

of the successful applicants were Caucasian and two were African American. Therefore, Plaintiff has not identified any comparator for the Team Leader promotion. Plaintiff also failed to present evidence that no reasonable person could have selected Defendant's choices for Team Leader over Plaintiff. Because Plaintiff did not demonstrate he was qualified and did not identify a similarly situated comparator, no reasonable fact finder could find that Plaintiff has established a *prima facie* case of race discrimination.[5]

### 3. April 10, 2007 Employment Termination

Plaintiff argues Defendant unlawfully discriminated against him on April 10, 2007, when Defendant terminated his employment. Defendant contends that Plaintiff cannot establish a *prima facie* case of discrimination and that is has a legitimate, non-discriminatory reason for terminating Plaintiff's employment. Defendant argues it discharged Plaintiff because he violated Defendant's Work Place Violence Policy.

#### a. *Prima facie* case

To make out a *prima facie* case of race discrimination under Title VII, a plaintiff must show (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) his employer treated similarly situated employees outside of his protected class more favorably than he was treated; and (4) he was qualified to do the job. *Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1322 (11th Cir. 2006). Defendant

---

[5]Defendant has also presented evidence that it had a legitimate, non-discriminatory reason for not promoting Plaintiff to Team Leader: Plaintiff's written assessment score was 48 out of 100 points.

contends that Plaintiff cannot demonstrate that it treated a similarly situated employee outside his protected class more favorably.  The Court agrees.

To determine whether employees are similarly situated, the court evaluates "whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways."  *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1280 (11th Cir. 2008) (quoting *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)).  A comparator is an employee "similarly situated [to the plaintiff] 'in all relevant respects.'" *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)).  The "'quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.'" *Burke-Fowler*, 447 F.3d at 1323.  Misconduct merely "similar" to the misconduct of the disciplined plaintiff is insufficient.  *Id*. at n.2.  Therefore, "the plaintiff must show that the comparator employees are involved in or accused of the same or similar conduct yet are disciplined in a different, more favorable manner."  *Anderson v. WBMG-42, Parker Commc'ns, Inc., et al.*, 253 F.3d 561, 564 (11th Cir. 2001).

Plaintiff identified two comparators in his Complaint: Jay Farrior ("Farrior") and Drew Pierce ("Pierce")[6].  Farrior is a Caucasian male.  In June of 2006, Farrior and a

_____

[6]In Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (Doc. #35), Plaintiff identifies two other comparators: Min Ho Lee and "a Korean Hyundai employee." Plaintiff has not submitted any evidence that these alleged comparators are similarly situated in all relevant aspects.

temporary female employee ("Pierson") were on a work break.  Pierson struck Farrior on the head with her hand.  Farrior struck back.  Both were laughing.  Defendant's Team Relations Department investigated the incident by interviewing and obtaining statements from witnesses.[7]  The Team Relations Department concluded that (1) Farrior was the not aggressor, and (2) the incident was horseplay and not actual violence.  The Team Relations Department forwarded its conclusion to the Workplace Violence Committee, which suspended Farrior for three days and issued a disciplinary memorandum. Defendant released Pierson back to her employer.

Defendant argues that Farrior's incident differs from Plaintiff's because Farrior was the not aggressor and Defendant's Team Relations Department determined that the incident was horseplay.  The Court agrees that Plaintiff and Farrior are not sufficiently similarly situated.  In Plaintiff's case, Defendant's Team Relations Department determined that the altercation between Plaintiff and Bowman contained serious threats and that Plaintiff was the aggressor.  Plaintiff also identified Drew Pierce as a comparator ("Pierce") in his Complaint.  Plaintiff alleges that Pierce lunged at him in a threatening manner and that Defendant did not discipline Pierce.  Pierce is an African American male

---

[7] In Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (Doc. #35), Plaintiff contends that he personally observed Farrior choking Pierson.  Plaintiff did not submit any evidence that he told Defendant his observations during Defendant's investigation.  Regardless, Defendant investigated Farrior's altercation and Plaintiff's altercation and came to different conclusions.  Plaintiff has not submitted any evidence that Defendant's investigations were done in bad faith.  *See Alphin v. Sears, Roebuck & Co.*, 940 F.2d 1497, 1501 (11th Cir. 1991) (stating that a court should "not sit as a super-personnel department" to examine an employer's management decisions) (internal citations omitted).

and therefore not an appropriate comparator.  No reasonable fact finder could find that

Plaintiff has established a *prima facie* case of retaliation with respect to his employment

termination because Plaintiff did not offer any evidence that employees outside his class

were involved in the same or similar conduct yet disciplined in a different, more favorable

manner.

## B. Plaintiff's Claim of Alleged Retaliation

In his Complaint, Plaintiff alleges that Defendant unlawfully retaliated against him

for opposing unlawful employment practices pursuant to Title VII and section 1981.

Retaliation claims also require analysis under the *McDonnell Douglas* shifting

framework.  *See Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001).

Under this framework, the plaintiff has the initial burden of showing, by a preponderance

of the evidence, a *prima facie* case.  *McDonnell Douglas Corp. v. Green,* 411 U.S. 792

(1973).  Once the plaintiff establishes a *prima facie* case, the defendant has the burden of

producing a legitimate, non-discriminatory reason for the challenged employment action.

*Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997).  If the defendant

produces such a reason, then the plaintiff has the ultimate burden of proving the reason to

be a pretext for unlawful retaliation.  *Crawford v. Carroll,* 529 F.3d 961, 975 (11th Cir.

2008).

### 1. May 2006 Removal of "Floater" Duties

#### a. *Prima facie* case

Plaintiff alleges that Defendant unlawfully removed him from his "floater" duties in May of 2006 because he had written several letters complaining of race discrimination. Plaintiff wrote letters complaining of race discrimination in February of 2006 and May of 2006.  To prevail on a Title VII retaliation claim, a plaintiff must show: (1) he engaged in protected opposition to discrimination; (2) a reasonable employee would have found the challenged action materially adverse; and (3) a causal connection exists between the protected activity and the materially adverse action.  *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 54 (2006); *Grimsley v. Marshalls of MA, Inc.*, 284 Fed. Appx. 604, 608 (11th Cir. 2008) (recognizing that the new *Burlington* standard applies to Title VII's anti-retaliation provision but does not apply to substantive claims of discrimination); *Reis v. Uni. City Dev. Partners, Ltd.*, 422 F. Supp. 2d. 1238, 1253 (M.D. Fla. 2006) (applying objective "reasonable employee" standard to Title VII retaliation claim).  Defendant contends that Plaintiff cannot establish the second two elements of a *prima facie* case.  The Court agrees that Plaintiff cannot demonstrate the third *prima facie* element.

In *Burlington Northern & Santa Fe Ry. Co. v. White*, the United States Supreme Court discussed how harmful an act of retaliatory discrimination must be in order to fall within the prohibition of Title VII.  548 U.S. 53, 54 (2006).  While answering this

question, the Court held that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*. The Court emphasized that such adversity must be material as the statute does not protect employees from "those petty slights or minor annoyances that often take place at work." *Id*. The Court also stressed the objective nature of this standard and the necessity of applying its general terms in the context of each case. *Id*.

Applying the *Burlington* standard to the undisputed facts of this case, there is a sufficient evidentiary basis for a fact finder to conclude that a removal of "floater" duties is materially adverse to a reasonable employee. Although a "floater" does not receive additional pay or benefits, Plaintiff submitted evidence that "floating" duties carry some prestige among co-workers. Therefore, a fact finder could conclude that a reasonable worker would be dissuaded from writing letters complaining of race discrimination if it resulted in his removal from "floating."

To establish a *prima facie* case, however, Plaintiff must also demonstrate a causal connection between his letters of complaint and his removal from "floater" duties. "The causal link element is construed broadly so that 'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.'" *Pennington v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir. 2001) (citations omitted). One common method of establishing the causal link element with

27

circumstantial evidence is close temporal proximity between the adverse employment action and the protected activity.  However, where there is significant delay between the protected conduct and the allegedly retaliatory acts, the timing of the events does not constitute circumstantial evidence of causation.  *See, e.g., Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273-74 (2001) (citing with approval several court of appeals decisions for the proposition that a three to four month gap is insufficient to establish the causal relation prong in a retaliation case); *Wascura v. City of South Miami,* 257 F.3d 1238, 1244-45 (11th Cir. 2001) (While a close temporal proximity between two events may support a finding of a causal connection between those two events, the three and one-half month period between plaintiff's protected conduct and the adverse employment action challenged does not, standing alone, establish a causal connection); *Keel v. United States Dep't of Air Force,* 256 F. Supp. 2d 1269, 1291 (M.D. Ala. 2003) (more than seven month gap between protected conduct and allegedly retaliatory conduct was insufficient as a matter of law to establish the causation element of the *prima facie* case of retaliation); *Gaddis v. Russell Corp.,* 242 F. Supp. 2d 1123, 1146-47 (M.D. Ala.)*, aff'd without opinion,* 88 Fed. App. 385 (11th Cir. 2003) (granting employer summary judgment on three of plaintiff's retaliation claims because plaintiff was unable to establish the requisite causal connection between her protected conduct and her adverse employment actions where lapses of time six months or longer existed between the protected conduct and the adverse employment actions).  In addition to temporal

28

proximity, a plaintiff must also establish that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action to satisfy the "causal link" prong of a *prima facie* retaliation case. *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997) (citing *Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir. 1993)).

Plaintiff has established sufficient temporal proximity between the protected activity and the materially adverse action. Plaintiff wrote the letters of complaint in February and May of 2006, and Defendant removed Plaintiff from his "floater" duties in May of 2006. However, Plaintiff did not offer any evidence that those who decided to remove him from "floater" duties were actually aware that he had written letters of complaint. Indeed, Plaintiff did not submit any evidence identifying those who made the decision to remove him from "floater" duties. Therefore, no reasonable fact finder could find that Plaintiff has met the *prima facie* requirements of retaliation.[8]

### 2. January 2007 Team Leader Application

#### a. *Prima facie* case

Plaintiff also alleges that Defendant unlawfully denied him the position of Team Leader in January of 2007 because he filed a Charge of Discrimination with the EEOC on

---

[8]In addition, Defendant has submitted evidence of a legitimate, non-discriminatory reason for removing Plaintiff from "floater" duties. Plaintiff had asked to be relieved and several Team Members had complained of Plaintiff's performance. Plaintiff did not offer any evidence of pretext. Therefore, even assuming, *arguendo*, that Plaintiff could establish a *prima facie* case, Defendant is still entitled to summary judgment on this claim.

October 6, 2006. Defendant does not dispute that Plaintiff's filing constitutes protected activity and that Plaintiff suffered an adverse employment action. Defendant argues that Plaintiff has not established the third element of the *prima facie* case – the causal link between the protected activity and the adverse employment action.

Here, Plaintiff did not offer any evidence that those making the Team Leader decision were aware in January of 2007 that he had made a complaint to the EEOC in October of 2006. Therefore, no reasonable fact finder could find that Plaintiff has established a *prima facie* case of retaliation with respect to the Team Leader promotion.

### b. Legitimate Non-Discriminatory Reason

Assuming, *arguendo*, that Plaintiff has satisfied the elements of a *prima facie* retaliation case with respect to the Team Leader promotion, Plaintiff's claim still fails under the *McDonnell Douglas* framework. Once a plaintiff has established a *prima facie* case of retaliation, the defendant then has the burden of producing a legitimate, non-discriminatory reason. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997). Defendant has presented evidence of a legitimate non-discriminatory reason for denying Plaintiff the position of Team Leader in January of 2007: Plaintiff did not perform satisfactorily on the written assessment. All other employees that Defendant promoted had scored higher on the written assessment than Plaintiff, and two employees who became Team Leaders were African American males. Because Plaintiff hasn't shown that Defendant's legitimate, non-discriminatory reason to be a pretext, Defendant

is entitled to summary judgment.

### 3. April 10, 2007 Employment Termination

#### a. *Prima facie* case

Plaintiff also alleges that Defendant unlawfully terminated his employment on April 10, 2007 because he filed a Charge of Discrimination with the EEOC on October 6, 2006.  Defendant argues that Plaintiff has not established the causal link element of the *prima facie* case.  The Court agrees.

Over six months elapsed between Plaintiff's filing and Defendant's decision to terminate his employment.  This time period is insufficient to establish the temporal proximity requirement of the causal relation element.  *See supra* Section V.B.1.a. Plaintiff also did not offer any evidence that Warner, who decided to terminate his employment, was aware that Plaintiff had made a complaint to the EEOC.  Therefore, no reasonable fact finder could find Plaintiff had demonstrated a *prima facie* case of retaliation.[9]

## C. Plaintiff's FMLA Claims of Interference and Retaliation

Congress enacted the FMLA to create job security for employees who have serious health conditions that prevent them from working for temporary periods.  *See* 29 U.S.C. § 2601(a)(4).  Among the substantive rights granted by the FMLA to eligible employees are the right to "12 work weeks of leave during any 12-month period .... [b]ecause of a

---

[9] Defendant also offered evidence of a legitimate, non-discriminatory reason for terminating Plaintiff's employment: Plaintiff violated Defendant's Work Place Violence Policy.

serious health condition that makes the employee unable to perform the functions of the position of such employee" and the right following leave "to be restored by the employer to the position of employment held by the employee when the leave commenced" or to an equivalent position.  29 U.S.C. § 2614(a)(1).  To preserve these rights and enforce them, the FMLA creates two types of claims: interference claims and retaliation claims. *Strickland v. Water Works & Sewer Bd. Of City of Birmingham*, 293 F.3d 1199, 1206 (11th Cir. 2001).

### 1. Interference

To state an interference claim, an employee must demonstrate that he was entitled to but denied a substantive right under the FMLA.  *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1353-54 (11th Cir. 2000).  An employer, however, may present an affirmative defense and deny a substantive right "if it can demonstrate that it would have discharged the employee had it not been on FMLA leave."  *Strickland*, 239 F.3d at 1206. For example, the "FMLA does not insulate an employee who has requested medical leave from being terminated for poor performance."  *Gamba v. City of Sunrise*, 157 Fed. Appx. 112, 112 (11th Cir. 2005) (stating that "[s]o long as the employer would have taken the same action it did regardless of the request for leave, there is no statutory violation").

Defendant argues as an affirmative defense that it would have terminated Plaintiff's employment irregardless of whether he had requested FMLA leave.  The record shows that Defendant discharged Plaintiff because of his altercation with Bowman

32

and that Wagner was not aware of Plaintiff's FMLA status.  In his response to Defendant's argument, Plaintiff "relies on [his] argument stated herein to demonstrate that the record does not establish beyond dispute that Hyundai would have discharged Baldwin had he *not* taken his FMLA leave."  (Doc. #35. pg. 20).  On a motion for summary judgment, the Court deals with undisputed facts and with the application of the law to those facts.  Plaintiff's burden at summary judgment to "go beyond the pleadings and by [her] own affidavits or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citation omitted).  Here, Defendant has submitted several pieces of evidence that it discharged Plaintiff because of his altercation with Bowman.  Plaintiff has not submitted any evidence from which a reasonable fact finder could find that Defendant would not have terminated his employment had he not requested FMLA leave.  Accordingly, the Court has carefully considered the submissions of the parties to find that no fact finder could find Plaintiff has established a FMLA interference claim.

### 2. Retaliation

To succeed on a claim of retaliation under the FMLA, an employee must demonstrate that (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment decision; and (3) the decision was causally related to the protected activity.  *Parris v. Miami Herald Publ'g Co.*, 216 F.3d 1298, 1301 (11th Cir. 2000).

Unlike a FMLA interference claim, a retaliation claim carries the burden of showing that the employer's actions were motivated by an impermissible retaliatory or discriminatory animus. *Strickland*, 293 F.3d at 1207.  When an employee asserts a claim of retaliation under the FMLA, in the absence of direct evidence of the employer's intent, the Eleventh Circuit applies the *McDonnell Douglas* burden-shifting framework.  *Id*.

Defendant argues that Plaintiff cannot establish the third element of a *prima facie* case – that Warner fired him for engaging in a protected activity.  Plaintiff contends that the short time lapse between his FMLA leave and Warner's decision to fire him constitutes sufficient circumstantial evidence to demonstrate that Defendant was retaliating against him for seeking FMLA protection.  The Eleventh Circuit has held that "[a] decision maker cannot have been motivated to retaliate by something unknown to him." *Brungart v. BellSouth Telecomm. Inc.*, 231 F.3d 791, 799 (11th Cir. 2000).  Evidence of a short time lapse between an employee's leave and an employer's decision to fire the employee cannot satisfy the causation element of an FMLA retaliation claim alone.  *Strickland*, 293 F.3d at 1208 (finding that nine days between FMLA leave and employer's decision to fire plaintiff insufficient to satisfy causally related element); *Spann v. DynCorp Technical Servs., LLC*, 2006 WL 1667294 at *3 (11th Cir. 2006) (finding that "temporal proximity ... alone is not sufficient to establish pretext").

Plaintiff has presented no evidence that Warner knew about Plaintiff's request to take FMLA leave.  Defendant has presented the Court with Warner's declaration where

34

she states, under penalty of perjury, that she had no knowledge of Plaintiff's FMLA request at the time she decided to terminate his employment. Therefore, no reasonable fact finder could Plaintiff has demonstrated a *prima facie* case of FMLA retaliation.[10]

**D. Defendant's Motion to Dismiss, or in the Alternative, for Sanctions**

Also before the Court is Defendant's Motion to Dismiss, or in the Alternative, for Sanctions (Doc. # 17), filed on February 11, 2009. Defendant argues that Plaintiff prejudiced Defendant by engaging in a pattern of deceit, presenting false and misleading testimony, and obstructing the discovery process. Because Defendant is due to be granted summary judgment on all of Plaintiff's claims, Defendant's Motion to Dismiss is due to be DENIED AS MOOT.

**E. Defendant's Motion to Strike**

Defendant's Motion to Strike Material from Plaintiff's Evidentiary Submission (Doc. # 38) presently before this Court is due to be DENIED AS MOOT due to the fact that whether or not any of the evidence at issue was stricken would not alter this Court's ruling.

## VI. CONCLUSION

For the reasons set forth in this Memorandum Opinion and Order, the Court finds that Defendants are entitled to summary judgment on all of Plaintiffs' claims.

---

[10]In addition, Defendant has presented a legitimate, non-discriminatory reason for terminating Plaintiff's employment: Plaintiff's altercation with Bowman. Plaintiff has not presented any evidence of pretext.

Accordingly, it is hereby ORDERED as follows:

     (1) Defendant's Motion for Summary Judgment (Doc. # 18) is GRANTED;

     (2) All of Plaintiff's claims are DISMISSED WITH PREJUDICE;

     (3) Defendant's Motion to Dismiss, or in the Alternative, for Sanctions (Doc. # 17)

is DENIED as moot;

     (4)  Defendant's Motion to Strike (Doc. #38) is DENIED as moot;

     (5) The trial and pretrial in this matter are CANCELLED;

     (6) The Court will enter a separate final judgment in favor of Defendants

consistent with this Memorandum Opinion and Order.

     DONE this the 10th day of April, 2009.


                                /s/ Mark E. Fuller

                          CHIEF UNITED STATES DISTRICT JUDGE